Case number 20-3913 James Cyrus v. Sharon Gaber. Oral argument not to exceed 15 minutes per side. Crystal Ritchie for the appellant. You may proceed. Good afternoon counsel. You may proceed. Thank you, Your Honor. Good afternoon. May it please the court, counsel, my name is Crystal Ritchie and I represent Opportunities for Ohioans with Disabilities, the appellant in this case. Opportunities for Ohioans with Disabilities has appealed the Northern District's July 28, 2020 order because the court abused its discretion when it granted Mr. Cyrus' motion to enforce the terms of the settlement agreement that was entered into by the parties on September 23rd of 2019. Now Mr. Cyrus is a blind operator who runs a coffee stand or kiosk at the University of Toledo's health science campus. Mr. Cyrus filed suit in 2019 seeking a TRO and injunctive relief to allow him to also do catering out of that coffee kiosk. Now in its decision, the district court cites to Eastham v. Chesapeake Appalachia and states that when confronted with an issue of contract interpretation, a court's role is to give effect to the intent of the parties. However, the district court failed to follow this case and give effect. The issue in this case is whether police support is required by the settlement agreement, right? That is one of the three elements, Your Honor, that was considered to be adequate documentation of the theft. Okay, but Mr. Cyrus didn't provide a police report on this particular. He did provide one, but it was different. It was the tip jar or whatever. So the question is whether he had to do it under the agreement. Is that right? Correct. Okay, and your brief talks a lot about the definition or the meaning of police report, and I don't understand why. It seems to me the case comes down to whether the word include is followed by an exhaustive list of items or an example. The district court thought that they were just examples of what adequate documentation could be, right? And your argument is it has to be a police report has to be there. It's an exhaustive list. Is that right? That is correct. The agreement was memorialized in a transcript. Right. Okay, so the word include is normally followed by a non-exhaustive list. Is that right? Well, the three items were the list. Okay, I'm talking about generally, the word include, cannons of construction. I mean, I didn't see any cases cited in your brief on what the word include generally means, but my understanding is it generally is followed by a non-exhaustive list of items. Is that right? Well, include can be, especially when you use the word and with the list, that means all of those things instead of using or, you know, including this. But if it were a non-exhaustive list rather than using the word include, wouldn't it just use the word requires? And I'll let you answer that first and then I'll have another question for you. Well, I think that what the list was entailed or was given was to show that the items had been purchased and the items had been stolen. So I'm not sure what else would have shown, you know, like independent evidence of a theft, but for a police report or something other. But the police report wouldn't really show that, would it? It would just show the allegation. And isn't it the case that in the history of relationships between these two that Mr. Cyrus had been told not to call the police? That is actually not true, Your Honor. There is nothing that Mr. Cyrus. I don't mean in this particular instance, but had he not been told generally not to call the police because that affected things or could expect things like insurance and that kind of thing? No, he had never been told that, Your Honor. In fact, they obviously did call the police for the theft of the tip jar. So he was never told that by anyone at OOD and that was never the practice at OOD. I'm not sure why you would call the representative as opposed to calling to report a theft. They can certainly assist with documenting the theft, but that was never an either or choice. But the police report itself would not show proof of criminal conduct, would it? It would just be the reported allegation of whoever made the call. The police would come and take a statement. Maybe under appropriate circumstances, they'd do an examination. But that would not be proof of theft, would it? Well, that would at least be an independent, cooperating statement from the officer that would have appeared and conducted the investigation that something was stolen. And in the police report that they did produce, the manager, Dina, who talks with the officer, I believe she talks about it's on the last page of the police report. She does say that $40 was stolen from a locked drawer, nothing further. It's interesting that that report was taken on May 1st of 2019. And earlier in that same day of May 1st, one of the emails that Mr. Cyrus did produce, this was an email to the business consultant there at OOD, so that was his point of contact. He says that Dina, the manager, is reporting that bottles of syrup are going missing in addition to this tip money. So earlier that morning, it's multiple things, but when the police arrived, it's just the tip jar. And she says there's nothing further to report that is stolen. So that's inconsistent, at least with regard to the report that was produced. When this agreement was memorialized on the record, there was not a question about, hey, I don't have any police reports to produce because you've told me not to ever call the police. So if that was a question, I would think that that would have been raised at the time of the memorializing of the terms of the agreement. Why would he agree to produce something that he's told not to do? That wouldn't make a whole lot of sense. So is there any evidence really to rebut Cyrus's verified statement that OOD told him he should not contact the police directly and instead should report the theft to OOD's local representative? So you have nothing to rebut that statement? There was no discovery done in this case, Your Honor. Actually, the complaint that was initially made for the TRO and the injunctive relief, that was actually a complaint for the catering. This was addressed before the court because it was violating an agreement that the university had with a third party. So this agreement kind of came about as almost an afterthought because if you read the original complaint, the TRO, there is no mention of theft of anything. This is all just trying to enjoin the parties, OOD and the university, from precluding Mr. Cyrus from doing this catering. So they had agreed the excess product and other things that were purchased for the catering services. And he did do catering for a couple of months before it was discovered that this was in violation of a collective bargaining agreement with a union. So he was also reimbursed for those items that was purchased for the catering. But in addition to, you know, being reimbursed for these thefts, that was something that wasn't a direct result of the lawsuit. This was just a settlement that was made on the record following the discussion about the catering. So my final question, you talked before about if he made a police report and the police came out and investigated, that would at least be an independent third party to supposedly substantiate the theft. But if he reported this to an OOD representative, that would, why wouldn't that be a, that have the same effect rather than reporting it to some third party? I understand that the agreement talks about police report. But if the objective is just simply to have a third party, you know, report, why isn't that report to OOD sufficient? Right, I think, you know, they wanted to show that other than him sending the emails to the business consultant, they wanted to show other effort on his part to report this theft. I'm not sure if there was a distrust between the two parties at the time, but there was at least, that was what was requested to show that the theft had occurred. That would be the adequate documentation. So the court finds that Mr. Cyrus has provided adequate proof of the thefts, and it gives a dictionary definition of adequate proof or adequate documentation. But it does ignore the parties agreed upon definition of adequate proof or adequate documentation. And that would be in direct contradiction of the Easton case, which states that a reviewing court must give effect to the intent of both parties to a contract, not just one. So based upon the district court's refusal to use the parties agreed upon definition of adequate documentation and its refusal to give effect to the intent of the parties to this agreement, OOD asked that the district court overrule the court's granting of Mr. Cyrus's motion to enforce the settlement. And this case should be dismissed with prejudice. Thank you. And I reserve four minutes for my rebuttal. Thank you. Thank you. Thank you. May it please the court, my name is Paul Belazis and I represent Mr. Cyrus. The issue before the court is whether or not Mr. Cyrus provided adequate documentation in relation to the request that he be credited with $7,500 in inventory for coffee that was stolen. Now, in connection with the motion to enforce, the parties were offered an opportunity to have a hearing and to conduct discovery. OOD had an opportunity to conduct whatever discovery it wanted and they chose not to do that. The motions that were submitted were, in Mr. Cyrus's case, supported by sworn testimony as well as documentation. And the sworn statement made very clear that Mr. Cyrus did everything right, everything the way that he was supposed to. There's an agreement between OOD and the university that allows him to be present and operate that coffee kiosk. Only OOD and the university were signatories. The agreement made very clear that the university was supposed to ensure that all food storage space can be locked and or appropriately secured by OOD's vendor to prevent tampering or theft. In other words, the agreement contemplated that there would likely be theft in the absence of security. And there were two forms of security. One is that the kiosk was supposed to have security cameras turned on. So it seems to me, again, I'll go back to my original questions, this case comes down to whether he had to provide a police report or not, right? Yes, I agree. Okay, so then the question is, was that a requirement? And the relevant language is adequate documentation, which would include police reports, receipts, and pricing. And normally the word include is followed by a non-exhaustive list. However, here it says would include, which would include, as opposed to saying perhaps which could include. If it said which could include these three things, I would say, okay, that's probably not exhaustive. But this would is obviously a derivative of will, and it says would include this, this, and this. So why is that not an exhaustive list of things you have to provide? Well, it is, from our point of view, a non-exhaustive list because there could be a number of forms of support to demonstrate the value and the fact that these events had been reported. And that's where I was going, Your Honor. First of all, the one police report that did exist was provided. And Mr. Cyrus did not make that police report. It was one of his employees. And, you know, these are employees that served coffee at a coffee kiosk. Forty-one dollars of their earnings from that day were stolen. So it's not surprising that they might have called the police, but it was not Mr. Cyrus that contacted them. It was one of the employees, and that's clear from the police report. That police report obviously was known, and it was provided to OOD. So any police report that he had was provided. But more importantly, Mr. Cyrus had been in communication with OOD's own employee on repeated occasions, both verbally and in writing. And this started in August, and this is, again, supported by a sworn statement, which has not been disputed by OOD. He began in August contacting Lynette Hestwick, who was the OOD local representative, advising her that there had been theft and that the security procedures promised by OOD and by the university had not been put into place. And that included security cameras. And the bigger problem was that in the storage area, where most of this stuff was taking place, that there was a pull-down metal front. And it's like what you see in New York City. You know, it goes all the way down to the bottom. There's a padlock with a hasp, but you can keep it shut. The university, for over a year, after repeated requests, had not taken the trouble to install the hasp. And at the kiosk, they had not bothered to turn on the security cameras. And so he was experiencing theft. And he did exactly what he was told to do, which is to contact OOD's local representative so that they could handle it. And they would then be in a position to determine whether the police should be called. If she had contacted the police, if that's what OOD wanted her to do, then more reports would have been available. And, of course, whatever was available, Mr. Cyrus would have provided. So he did everything that he was supposed to do. And he also, in addition to the verbal, ongoing verbal communications that he had with Ms. Huswick, he sent her several emails over the course of these events. Beginning in February, the kiosk opened in October. He began, in addition to, and his affidavit says that he began contacting her in August, when before the kiosk even opened, the university wanted him to operate just a small coffee stand. So that started in July. In August, he started noticing theft. His affidavit says that's when he began contacting Ms. Huswick. By February, he had sent her an email indicating that he was still having trouble with theft. In May, he began to notice that he was losing money at his facility because the amount of product that was being used, without any explanation, was just off the charts, as he put it. It was at 55% of revenue, which just for that month, it was food costs of $55,000. One of his emails indicates that they had ordered a pallet of coffee the day before, and already they were in a position where so much of it had disappeared that they had to order another one for the following week. I mean, there was ample documentation of whether or not he had identified the issue of theft, taken the steps that he was supposed to do, and none of it has been disputed by OOD. They have not submitted. It was their own employee. If those facts were not true, if he had been told that it was his responsibility to contact the police and not OOD's, they certainly had the ability to secure a contrary affidavit from their own employee and to submit it to the court. They didn't do that. So Mr. Cyrus's testimony is undisputed. But why would he agree to provide a police report if he thought that there weren't any police reports? Well, I don't know that he had any reason to know how many there were, because it wasn't his job to... But why wouldn't you say, which would include police reports, if any, you know, receipts and pricing, something like that? I mean, I just don't... This whole case is odd to me. Apparently we're disputing $7,500 here. Yeah, Judge, I know. I don't understand, but whatever. Okay, fine. There's no police report, it seems to me, with regard to this $7,500. There's a police report with the other stuff. It, to me, comes down to whether you had to provide a police report. I don't know any other way to read which would include. I mean, if you meant may include, you use may include in another part. Or you also use which would include things such as. So there's another part of the agreement that uses that language. Those two things are not exhaustive. This one seems like it's exhaustive. That's what I'm struggling with here. If it had said must include, then I would agree with you, Judge. But I think would include allows for an interpretation that it is a non-exhaustive list. And I don't think it was an abuse of discretion for Judge Zuhari to look at this record as a whole that he had in front of him and determined that Mr. Cyrus took appropriate steps to report the theft, that he had done so over a period of a number of months. He had done so in writing. He had contacted the person that he was told to contact. He worked within the limitations that were imposed on him. And then, in addition, he provided detailed documentation of what was taken. And, Judge, to answer your broader question, I mean, we alluded to the record citations pertaining to how this case arose. But the broader issue was that he had been given assurances that he would be able to operate catering out of this coffee kiosk when it opened. He had spent tens of thousands of dollars hiring and training staff who had left their jobs to work with him as part of the catering, in addition to the other catering function, the kiosk functions. He had been assured by a vice president of the university who was overseeing the food services. He had been assured by OOD. And then the university got a grievance from the union because they did, you know, they had a cafeteria that they operated saying, this is our work, you can't do it. And so the university said, stop, you can't cater anymore. It doesn't matter that you spent, you know, half of your life's fortune to get it going. The OOD initially took the position that Mr. Cyrus was correct. And when the university insisted, they just caved. And that's what resulted in this lawsuit. And it was an operation that had the potential to generate significant revenue for a blind vendor. And OOD just caved. And when we finally settled it, we came to an agreement that would allow him to just change the terms. And this was just one more issue that, you know, in addition to everything else they'd done to him, now on top of that, they went for a year without putting a hasp in the metal door so he could not have his inventory stolen every day. And so that was included in the settlement agreement, Judge. And I've never understood why OOD would bring that kind of an issue to the United States Court of Appeals after it was reasonably and legitimately decided by a district court judge. Thank you very much for your attention. Thank you. A rebuttal. Just to address the issues that were brought up by Mr. Balassas, the catering issue, that was something that the product and the items that were necessary for the catering, those were purchased by OOD. The only thing that Mr. Cyrus was out of pocket would have been any hiring or training. But those items, the dishes and the equipment and everything, those were purchased by OOD. And in addition to the agreement with regard to the theft, the agreement reimbursing him for product was also placed on the record in September of 2019. But that wasn't at issue because the only thing at issue is this police report and whether or not that was ever produced to show that. So the only thing at issue on this appeal is just the $7,500? Correct, Your Honor. It's $7,100. Why are we here? Why are you disputing? I mean, it just seems like so trivial for you to send somebody up from Columbus and he's got to be here. I mean, it just seems odd to me. Right. It is a small amount in the general scheme of things. So this program, though, is run by blind vendors that are operating vending on state and government property that because of the pandemic, a lot of that was closed. So a lot of the money that this program has for the last year plus has been greatly affected because of the pandemic. So, you know, the opportunities for these blind vendors only result from the money that comes in, that they pay a certain amount per month based on their sales. So that has been down for at least 20 plus months. So the $7,000, you know, seems to be a trivial amount. But for this program, it does matter. Why wouldn't you address it by going back and fixing your language? I mean, the kinds of questions that Judge Nalbandian asked before about what, you know, what includes. I mean, couldn't you fix the agreement and provide clarity of language that would address this? Well, it's OOD's position that that was clear, given that they, you know, defined adequate documentation. And at that point, if it wasn't clear, I'm not sure why Mr. Cyrus or his counsel did not say, we're not clear, is this an exhaustive list? Do you need all three of these things? And certainly, if there were never police reports or he was instructed not to ever contact the police, I don't understand why anyone would agree to provide something that they were told not to do. And it's interesting, with regard to the emails that were provided, there were four. And at least with two of the four, there's a question as to whether or not this theft is being done by his own employees. He mentions that on his email of February 1 of 2019, that items are not being paid, that may not be being paid for in exchange for tips. So there was a question as to whether or not this was something that was happening from his own employees. But isn't that a risk, though, anytime the vendor himself is blind? I mean, he doesn't know exactly who's doing the theft, and that's one of the risks in this operation, isn't it? Correct. But if there was, you know, someone else was taking these items because they weren't being secured, you would think that you would want to document that with a police report. He mentions also in a May 1 email that he needs to, he will be putting stronger inventory controls in place. So that was at least one way for OOD to show, you know, this police report that the theft was occurring because of issues with security. Given that the court did not follow the authority that is cited in the order, OOD would ask that this court overrule the granting of Mr. Cyrus' motion to enforce the settlement and dismiss this case with prejudice. Thank you, Your Honors. Thank you very much. And the case is submitted. There being no further cases for argument, court may be adjourned. Thank you very much. This honorable court is now adjourned.